# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2183

_____

David Dammen,                                        *
                                                     *
      Plaintiff - Appellant,                   *
                                                     *
                                                     *  Appeal from the United States
      v.                                       *  District Court for the
                                                     *  District of North Dakota.
UniMed Medical Center, formerly                      *
known as St. Joseph's Hospital,                      *
                                                     *
      Defendant - Appellee.                    *

_____

Submitted: February 16, 2000

Filed: January 17, 2001

_____

Before McMILLIAN, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

David Dammen appeals from the district court's[1] adverse grant of summary judgment on his age discrimination claim against UniMed Medical Center. We affirm.

Dammen began working for UniMed on April 22, 1964 as a maintenance mechanic. During his years of service with UniMed, he was eventually promoted to

_____

[1]The Honorable Dwight C. H. Kautzmann, United States Magistrate Judge for the District of North Dakota.

Department Manager/Plant Operations. Dammen, as Department Manager, was directly supervised by the Vice-President of Environmental Services. Don Jessen held that position until 1994 when he was replaced by Robert Cherry. In the fall of 1994, UniMed promoted David Kohlman, who is younger than Dammen and had been under his supervision, to the position of Energy Management Coordinator. In this new position, Kohlman reported directly to Cherry. Some of the work Dammen had been performing was shifted to Kohlman. On July 28, 1995, when Dammen was forty-nine years old, UniMed terminated Dammen and eliminated his position; however, UniMed gave Dammen severance pay in the form of his salary until the end of 1995. UniMed assigned the remainder of Dammen's job responsibilities to Cherry. Early in 1996, UniMed went through a major reorganization, in which thirty-five employees (including Cherry and two other vice-presidents) were terminated and their positions abolished. In March of that year, UniMed publicized a new position, that of Department Manager/Plant Operations, which it ultimately awarded to Kohlman. UniMed claims that this position, although identical in name to the position Dammen held when terminated by UniMed, is not identical in fact.

On April 8, 1996, Dammen filed a complaint with the North Dakota Department of Labor. The Department issued a letter of determination finding no age discrimination. Dammen then filed a complaint with the Equal Employment Opportunity Commission, which adopted the Department of Labor's finding of no age discrimination. Finally, Dammen filed a complaint in the district court, which entered summary judgment against him. We uphold the district court's judgment.[2]

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. See Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998). Summary judgment will be granted if "the pleadings,

---

[2]Since Dammen's complaint states only that his claim arises under the ADEA, we decline to consider any arguments related to the North Dakota Human Rights Act.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Webb, 144 F.3d at 1135. "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Webb, 144 F.3d at 1135.

The ADEA prohibits discrimination on account of age against anyone in the protected age group (40 and over). See 29 U.S.C. §§ 623(a)(1), 631(a) (1994). Because Dammen is relying on circumstantial, as opposed to direct, evidence of age discrimination by UniMed, we apply the three-stage approach developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined by the Court in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997) (en banc) (applying McDonnell Douglas and Burdine in ADEA case). First, the plaintiff has the burden of presenting a prima facie case. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2106 (2000). If the plaintiff does so, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. See Burdine, 450 U.S. at 254. Then, the employer must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves, 120 S. Ct. at 2106 (quoting Burdine, 450 U.S. at 254). The McDonnell Douglas framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. See id. Once the employer meets his burden of production, "the McDonnell Douglas framework--with its presumptions and burdens--is no longer relevant," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993), and the sole remaining issue is whether the employer discriminated. See Reeves, 120 S. Ct. at 2106. "Although intermediate evidentiary

burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Burdine, 450 U.S. at 253).

If the employer meets its burden of production, the plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. "[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," id. at 2108, "particularly if disbelief is accompanied by a suspicion of mendacity." Id. (quoting Hicks, 509 U.S. at 511). However, a showing by the plaintiff that the employer's reason for its decision was a pretext for discrimination will not necessarily insulate the plaintiff from summary judgment. See id. at 2109.[3]

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendants' explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Id. Whether summary judgment is appropriate "will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the

---

[3]Although Reeves involved a motion for judgment as a matter of law, "[t]he standards for granting summary judgment and judgment as a matter of law are essentially the same." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1081 (8th Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

employer's case and that properly may be considered on a motion for judgment as a matter of law." Id.

We will assume, as the district court did, that Dammen has met his burden of establishing a prima facie case by showing "(1) that he is within the protected age group; (2) that he met applicable job qualifications; (3) that he was discharged; and (4) that, after his discharge, the position remained open and the employer sought applicants with similar qualifications to fill the position." Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). However, the fourth element of his prima facie case is weakened by uncontroverted evidence offered by UniMed that Dammen's position was eliminated upon his termination and re-created later in name only, as the new position included duties not held by Dammen prior to his dismissal.

Next, we turn to the nondiscriminatory reasons UniMed articulated for Dammen's dismissal, see Reeves, 120 S. Ct. at 2106: (1) an ongoing effort to reduce costs; (2) Dammen's poor performance evaluation in 1995; and (3) the antagonistic nature of Dammen's relationship with his supervisor, Cherry. UniMed correctly notes that "[e]mployment decisions motivated by characteristics other than age (such as salary and pension benefits), even when such characteristics correlate with age, do not constitute age discrimination." Hanebrink v. Brown Shoe Co., 110 F.3d 644, 647 (8th Cir. 1997) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993)). UniMed's basic argument is that Dammen was a likely candidate for termination in the company's plan to reduce costs, which it supports by pointing to Dammen's poor job evaluation in 1995 and his strained relationship with Cherry. UniMed carried its burden to articulate legitimate, non-discriminatory reasons for Dammen's discharge, so the legal presumption of unlawful discrimination "'drops out of the picture.'" Reeves, 120 S. Ct. at 2106 (quoting Hicks, 509 U.S. at 511).

When an employer articulates a nondiscriminatory reason for an employee's discharge, the Supreme Court has made clear that "the factual inquiry proceeds to a

new level of specificity." <u>United States Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 715 (1983) (quoting <u>Burdine</u>, 450 U.S. at 255). The factual inquiry is whether the defendant intentionally discriminated against the plaintiff, <u>id.</u> (quoting <u>Burdine</u>, 450 U.S. at 253), and the plaintiff continues to bear the ultimate burden of persuasion, <u>Hicks</u>, 509 U.S. at 511; <u>Aikens</u>, 460 U.S. at 716.

Dammen makes several attempts to rebut UniMed's rationale for his termination and thereby withstand UniMed's motion for summary judgment. First, he argues that he had received favorable evaluations from Jessen, who held the position of Vice-President of Environmental Services prior to Cherry, and that he was offered Jessen's position upon Jessen's retirement but declined to take it. Cherry was ultimately awarded the position. We fail to see how events which occurred during Dammen's work relationship with Jessen can alter Dammen's poor relationship with and poor performance under Cherry. "[T]here is nothing inherently discriminatory in an employer choosing to rely on recent performance more heavily than past performance in deciding which employees to terminate during a [reduction in force]." <u>Brown v. McDonnell Douglas Corp.</u>, 113 F.3d 139, 142 (8th Cir. 1997) (internal quotations omitted).

Second, Dammen argues that UniMed's cost-cutting rationale is not to be believed, because UniMed's attempt to reduce costs did not occur until January 1996. The overall reduction in force culminated some five months after Dammen's termination. UniMed counters by alleging that its cost-cutting measures were an ongoing process. UniMed's response is uncontroverted on the record before us.

Third, Dammen contends that his alleged poor performance cannot be the true reason he was discharged, because he was placed on a preferential hiring list. UniMed's explanation is that this list "simply makes [Dammen] eligible for other positions at the hospital where his past performance may not have been relevant," as it was UniMed's preference to hire from within.

And last, Dammen points out that UniMed re-created his old position at a later date and filled it with a younger employee. There is no evidence suggesting that UniMed intended this chain of events when it terminated Dammen. Additionally, though the position is identical in name to the one held by Dammen at the time of his termination, there is evidence that this new position actually consists of duties once held by more than one employee prior to the company's layoffs. See Hanebrink, 110 F.3d at 646 ("This court, moreover, may not second-guess an employer's personnel decisions, and we emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully.").

Even assuming Dammen has presented a prima facie case of age discrimination, the weakness of his prima facie case and the low probative value of his evidence that UniMed's explanation is false convinces us that he has failed to present a submissible case of age discrimination. See Reeves, 120 S. Ct. at 2109. Therefore, we affirm the judgment of the district court.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.