**Mark STALHUT, Plaintiff,**

v.

**CITY OF LINCOLN and Tom Casady, in his individual and official capacities, Defendants.**

No. 4:00CV3268.

United States District Court, D. Nebraska.

May 30, 2001.

Carole J. McMahon-Boies, Pepperl, McMahon-Boies Law Firm, Lincoln, NE, for plaintiff.

Richard C. Anderson, City Attorney's Office, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Plaintiff, Mark Stalhut, is employed as a police officer by the defendant City of Lincoln, Nebraska. Also named as a defendant is Tom Casady, the chief of police, who is sued both personally and officially. Stalhut alleges that he was denied a promotion to the rank of sergeant because of age and gender discrimination. Casady, in his individual capacity, has moved for summary judgment on the basis of qualified immunity (filing 15). That motion will be granted.

## I. BACKGROUND

At issue is plaintiff's "fourth cause of action," brought pursuant to 42 U.S.C. § 1983, which alleges that "the City of Lincoln has an established policy of giving preference in hiring to those under forty and to women," in violation of the equal protection clause, and that plaintiff was treated differently from "younger officers seeking promotion" and from "female officers who received preference in hiring."[1] (Filing 1, ¶¶ 12–13) It is also generally alleged that Casady "acting in his individual and official capacity under color of law acted to deprive the plaintiff to his right to Equal Protection in the hiring process." (Filing 1, ¶ 12). The specific incident of discrimination alleged in the complaint is that on December 15, 1998, Stalhut, who was then 40 years old, was denied a promotion in favor of a younger, female officer.[2] (Filling 1, ¶ 3)

The evidence establishes that the Lincoln Police Department has a written policy regarding promotions, and that the matter is also governed by the Lincoln Municipal Code and by a labor agreement between the City of Lincoln and the Lincoln Police Union. There are a limited number of positions for the rank of sergeant, and promotions occur only when a new position is allocated or when one of the existing positions is vacated. The promotional process begins with a written examination, administered either annually or biannually, which results in a rank-order list of candidates. For the first promotion occurring after the compilation of this list, the top one-third of the candidates are eligible; for the second and subsequent promotions, the top two-thirds of the candidates are eligible. The chief of police ultimately decides which eligible candidate receives the promotion. (Filing 16, part I, "Casady affidavit," ¶¶ 4–6)

Chief Casady's practice has been to meet with the department's command staff of 17 captains and 2 assistant chiefs to solicit their input and advice regarding promotion of the eligible candidates, and to have them each prepare a list of their top three choices in order. After these lists are compiled, Casady again meets with the assistant chiefs regarding the listed candidates, and a review is made of personnel files. Since becoming chief of police in 1994, Casady has only selected sergeants from the list of candidates nominated by the command staff. (Casady affidavit ¶ 8)

On the basis of the written examination that was conducted in February 1998, Stalhut ranked fourth among 24 officers who were eligible for promotion. He, however,

1. Four additional "causes of action" are alleged against the City of Lincoln, involving claimed violations of: (1) the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634, (2) the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e–17, (gender discrimination); (3) Title VII (retaliation); and (4) the Nebraska Fair Employment Practice Act, Neb.Rev.Stat.Ann. §§ 48–1101 to 48–1125 (Michie 1995), and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb.Rev.Stat.Ann. §§ 48–1001 to 48–1009 (Michie 1995). None of these claims are brought against Casady, however.

2. Stalhut additionally claims that after he complained about this allegedly discriminatory treatment, he "was retaliated against by the City and a position he sought as a field training officer was given to a less qualified applicant." (Filing 1, ¶ 3) Although Casady has submitted evidence regarding Stalhut's failure to receive this assignment, and has discussed the matter in his brief in support of the pending motion for summary judgment, I do not construe plaintiff's "fourth cause of action" as pertaining to this subsequent incident. That is, I construe the complaint as seeking to hold Casady individually liable only with respect to his failure to promote Stalhut, based upon an equal protection claim. Consistent with this construction, plaintiff's brief in opposition to the pending motion only discusses the promotion.

was not nominated by the command staff for any promotion that was made during the remainder of the year, including on December 15, 1998, when a younger, female officer, Terri Lobdell, was made a sergeant. (Casady affidavit, ¶¶ 9–10)

According to Casady, when he made the decision to promote Lobdell, he was unaware either of her age or of Stalhut's age. The promotion decision was made on the basis that Lobdell was nominated by a large number of the command staff officers, and that she had distinguished herself from the other nominated candidates by recently obtaining a graduate degree. (Casady affidavit, ¶ 10)

Stalhut says that he was told by Casady six weeks prior to the time that the command staff officers made their nominations that Casady was going to promote Lobdell because "he couldn't pass up a female with a masters degree." (Filing 19, "Stalhut affidavit") Casady responds that he may have said that "it's hard to pass up a woman with a master's degree," but if so, it was only after the fact, when he met privately with Stalhut to discuss his promotional prospects and to offer suggestions for improving his candidacy. Casady says he used Lobdell as an example because she, after having been passed over for promotion previously, had decided to pursue a graduate degree. (Casady affidavit, ¶¶ 11–13)

Stalhut also says that he has been told by Casady that "no one over forty is likely to be promoted," and that Casady has been "very vocal and adamant regarding his policies on such things as hiring." Stalhut sought promotion during a two-year period, during which time at least four younger males were promoted, even though Stalhut had scored better on the examination than some of them. Also during this time, Terri Lobdell was the only female officer eligible for promotion, and, according to Stalhut, she was "much lower on the promotion list" than him. Stalhut further states, without elaboration, that he "had much more seniority and experience than all the chosen candidates." (Stalhut affidavit)

## II. DISCUSSION

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir.1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To withstand the application of qualified immunity, a plaintiff must assert a violation of a constitutional right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right. *Id.* (citing *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993)); *see also Buckley v. Rogerson*, 133 F.3d 1125, 1129 (8th Cir.1998) (citing *Burnham v. Ianni*, 119 F.3d 668, 673–74 (8th Cir.1997) (en banc)). *Hall v. Missouri Highway & Transp. Com'n*, 235 F.3d 1065, 1067 (8th Cir.2000).

On a motion for summary judgment, though, a genuine issue as to predicate facts material to the qualified immunity issue will defeat the motion.[3] *See Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000). As further explained in *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir.2000):

*Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir.2000). Once the predicate facts are established, for the purposes of qualified immunity, there is no such thing as a "genu-

---

**3.** "Predicate facts" include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions.

A motion for summary judgment on qualified immunity grounds is only precluded when the plaintiff has "(1) assert[ed] a violation of a constitutional right; (2) demonstrate[d] that the alleged right is clearly established; and (3) raise[d] a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff[s'] clearly established right." *Goff v. Bise,* 173 F.3d 1068, 1072 (8th Cir.1999) (quoting *Habiger v. City of Fargo,* 80 F.3d 289, 295 (8th Cir.), *cert. denied,* 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996)). Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful "in light of clearly established law and the information [that the defendant] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3037, 97 L.Ed.2d 523 (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam), quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 1097, 1096, 89 L.Ed.2d 271 (1986). Although qualified immunity is " 'an immunity from suit rather than a mere defense to liability,' " *Hunter,* 502 U.S. at 227, 112 S.Ct. 534 (emphasis omitted) (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806, 86 L.Ed.2d 411), and therefore its availability "ordinarily should be decided by the court long before trial," *Hunter,* 502 U.S. at 228, 112 S.Ct. 534, the nonmoving party is given the benefit of all relevant inferences at the summary judgment stage, and if a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." *Pace v. City of Des Moines,* 201 F.3d 1050, 1056 (8th Cir.2000).

In the present case, therefore, in order to deny the defendant's motion for summary judgment on the ground of qualified immunity I must make two findings: First, I must find that the record, when viewed in a light most favorable to Stalhut, would allow a reasonable finder of fact to conclude that Casady engaged in a course of conduct that violated Stalhut's clearly established constitutional rights.[4] Second, I

___

ine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. The conduct was either reasonable, or it was not, which is a determination of law that should be made at the earliest possible stage in litigation. Thus, when there is no dispute among the parties as to the relevant facts, a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity—that is, whether or not the officer acted reasonably under settled law given the particular set of facts. *Id.*

**4.** This requisite finding actually involves "a two-part inquiry: 'whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, … whether that right was clearly established at the time of the alleged violation.' " *Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001) (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999)). In considering a defense of qualified immunity raised by motion for summary judgment, of course, I am not obligated to assume that the facts alleged by the plaintiff in his complaint are true. *See Dunlap v. Hilgenkamp,* 82 F.Supp.2d 1052, 1056 (D.Neb.2000). In order to withstand the motion for summary judgment, the plaintiff "must substantiate [his] allegations with 'sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)).

must find as a matter of law that no reasonable official could have thought that such a course of conduct was lawful.[5] *See Hudson v. Norris*, 227 F.3d 1047, 1050 (8th Cir.2000). For the reasons discussed below, I am unable to find that a jury could reasonably conclude that Casady's alleged conduct violated Stalhut's clearly established rights.

### A. Clearly Established Rights

Stalhut claims that his equal protection rights were violated, in that he was discriminated against in public employment on the basis of his age (40 years) and gender (male). Gender is a suspect classification under the equal protection clause. *See Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir.1999). Age is not. *See Weber v. Strippit, Inc.*, 186 F.3d 907, 911 (8th Cir. 1999), *cert. denied*, 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000). Nonetheless, age discrimination may provide the basis for an equal protection claim. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–314, 96 S.Ct. 2562, 2566–2567, 49 L.Ed.2d 520 (1976) (per curiam) (statute setting mandatory retirement age at 50 for police officers analyzed under "rationality" standard); *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 (1979) (mandatory retirement at age 60 for foreign service officers held rationally related to legitimate governmental interests); *Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991) (mandatory retirement at age 70 for state judges upheld under rational basis test).

The Eighth Circuit has held that a reasonable person would know that a male federal employee has a clearly established constitutional right to be free of gender discrimination. *Duffy v. Wolle*, 123 F.3d 1026, 1036–37 (8th Cir.1997) (involving *Bivens* action against panel of federal district court judges for failure to appoint the male plaintiff to chief probation officer position), *cert. denied*, 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). The Court of Appeals based this holding on the Supreme Court's decision in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), that the equal protection component of the Fifth Amendment due process clause confers a right to be free from gender discrimination, coupled with the Court's earlier decision in *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), regarding the Fourteenth Amendment's prohibition against "reverse discrimination."

■ It necessarily follows from *Duffy* that a male municipal employee has a clearly established constitutional right, under the equal protection clause of the Fourteenth Amendment, to be free of gender discrimination, and that a reasonable person would have known of this right as of December 1998, when the decision to promote the female candidate was made.[6] Casady does not dispute this legal proposition, but merely argues that his conduct did not violate Stalhut's rights.

---

**5.** "[I]f the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, 'since a reasonably competent public official should know the law governing his conduct.'" *Sexton v. Martin*, 210 F.3d 905, 910 (8th Cir.2000) (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738).

**6.** The Eighth Circuit has "taken a broad view of what constitutes 'clearly established law'

for the purposes of a qualified immunity inquiry, requiring some but not precise factual correspondence with precedents and demanding that officials apply general, well-developed legal principles." *Boswell v. County of Sherburne*, 849 F.2d 1117, 1121 (8th Cir. 1988) (quoting *Lappe v. Loeffelholz*, 815 F.2d 1173, 1177 n. 3 (8th Cir.1987)). *See also Domina v. Van Pelt*, 235 F.3d 1091, 1098 (8th Cir.2000).

Similarly, Casady does not dispute that a reasonable person, as of December 1998, would have known that a municipal employee has a clearly established constitutional right to be free of age discrimination. Based upon the Supreme Court's decisions in *Murgia*, *Bradley*, and *Gregory*, it is clear that a right to be free of age discrimination in employment exists under the Fourteenth Amendment, although the parameters of this constitutional right may not be coextensive with statutory rights under the ADEA.[7] *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 86, 120 S.Ct. 631, 647, 145 L.Ed.2d 522 (2000) ("The Act, through its broad restriction on the use of age as a discriminating factor, prohibits substantially more state employment decisions and practices than would likely be held unconstitutional under the applicable equal protection, rational basis standard.").

This, however, does not end the inquiry. "[I]f the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct.

3034, 3039, 97 L.Ed.2d 523 (1987). Instead, "the right that the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence, more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039.

The next level of analysis, then, both as to the gender discrimination and the age discrimination claim, is to determine whether there is evidence that Casady's conduct violated Stalhut's clearly established rights. It is at this point that the defense of qualified immunity begins to look like a ruling on the merits. *See Duffy*, 123 F.3d at 1035.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly-situated people alike. *Ellebracht v. Police Bd. of Metropolitan Police Dept. of City of St. Louis*, 137 F.3d 563, 565 (8th Cir.1998) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). Thus, the threshold inquiry in an equal protection

---

**7.** There is a dispute as to whether Congress, in enacting the ADEA, preempted section 1983 actions for age discrimination in employment. The Fourth Circuit so held in *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir.1989), and a number of courts have since agreed with this determination. The Eighth Circuit has not directly addressed this issue, but did affirm, without reported opinion, Judge Bennett's decision in *Mummelthie v. City of Mason City, Ia.*, 873 F.Supp. 1293, 1328 (N.D.Iowa.1995), *aff'd*, 78 F.3d 589, 1996 WL 102572 (8th Cir.1996) (Table), in which it was held that "where the facts giving rise to the ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both." The recent trend among courts has been to follow the lead of Judge Bennett, although I note that the Tenth Circuit recently held in *Migneault v. Peck*, 158

F.3d 1131, 1140 (10th Cir.1998), *rev'd on other grounds*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000), that a state employee "failed to show the law is clearly established that a claim for age discrimination in employment is cognizable under the Equal Protection Clause, independent of the ADEA." (This holding was reaffirmed by the Court of Appeals on remand. *See Migneault v. Peck*, 204 F.3d 1003, 1004 n. 1 (10th Cir.2000).) It seems to me, however, that the issue of whether a clearly established constitutional right exists is separate and distinct from the issue of preemption. Section 1983 does not itself create substantive rights, but "merely provides remedies for deprivations of rights established elsewhere." *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir.2000) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985)), *cert. denied*, — U.S. ——, 121 S.Ct. 1364 (2001).

case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment. *Domina,* 235 F.3d at 1099.

Casady argues that Stalhut was not similarly situated to Terri Lobdell because (1) she was nominated for promotion by the command staff, and (2) she possessed a master's degree. Neither of these factors, however, is material at this first stage of examining the plaintiff's equal protection claim. The evidence shows that both officers were eligible for promotion, so in this critical respect they were "similarly situated." The distinguishing factors cited by Casady may indicate that Lobdell was better qualified for the position, but this is a consideration for later in the analysis. *See Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 & n. 3 (8th Cir.1994) (cautioning that "the meaning of 'similarly situated' varies according to the context in which it is used," and that "the district court must not conflate the prima facie case with the ultimate issue of discrimination.").

Because it has been demonstrated that the plaintiff was similarly situated to the younger, female officer who received the promotion, it must next be determined whether there is sufficient evidence to show that the promotion decision was made by Casady on the basis of age or gender. I will first examine whether there is a presumption of discrimination in this case.

### 1. *McDonnell Douglas* Analysis

Under the familiar three-step analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[8] the plaintiff bears the initial burden of establishing a prima facie case of

discrimination. Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. *See Cronquist v. City of Minneapolis,* 237 F.3d 920, 924 (8th Cir.2001) (citing *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1332 (8th Cir.1996)).

#### a. Prima Facie Case

"The elements of the prima facie case for a failure-to-promote claim are well established: The plaintiff must demonstrate '(1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied.'" *Lyoch v. Anheuser–Busch Companies, Inc.,* 139 F.3d 612, 614 (8th Cir.1998) (quoting *Marzec v. Marsh,* 990 F.2d 393, 395–96 (8th Cir. 1993)).

As previously discussed, the second element merely requires a showing that the applicant met the minimum qualifications for the position. *See Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 896 (8th Cir.1992) (age and gender discrimination case). There is no dispute that Stalhut was an eligible applicant for

---

**8.** "While a Title VII analysis is not always identical to a constitutional analysis, ... [the Eighth Circuit has] applied the *McDonnell Douglas* analysis to a claim of employment discrimination brought under 42 U.S.C. § 1983 as a violation of the Fourteenth

Amendment. *Richmond v. Board of Regents of Univ. of Minn.,* 957 F.2d 595, 598 (8th Cir.1992)." *Duffy,* 123 F.3d at 1036–37 (also applying *McDonnell Douglas* in *Bivens* claim against federal officials).

the sergeant's promotion, or that his candidacy was rejected.

Also, the reference to "similar qualifications" in the fourth element should not be read to require a plaintiff to prove, at least not as an initial matter, that he was equally deserving of the promotion. "The prima facie burden is not so onerous." *Davenport v. Riverview Gardens School Dist.,* 30 F.3d 940, 944 (8th Cir.1994) (holding that district court erred where it "essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action—in other words, to prove pretext and the ultimate issue of intentional discrimination."). *See also Johnson v. Arkansas State Police,* 10 F.3d 547, 551 (8th Cir.1993) (threshold of proof necessary to make a prima facie case is minimal and district court improperly conflated prima facie case with ultimate issue).

Perhaps a better formulation of this fourth element is, as stated recently in *Austin v. Minnesota Min. and Mfg. Co.,* 193 F.3d 992, 995 (8th Cir.1999), that "similarly situated employees, not part of the protected group, were promoted instead." I have already found that the evidence is sufficient to establish that Lobdell was "similarly situated" to Stalhut. Under the *McDonnell Douglas* four-part test, therefore, it only remains to be determined whether Stalhut, by reason of his age or gender, is a member of a "protected group" which does not also include Lobdell.

■ In the context of the ADEA, however, the Supreme Court has held that the *McDonnell Douglas* test is not strictly applicable, because the element of replacement by someone under forty "lacks probative value." *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). The Court explained:

As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a "legally mandatory, rebuttable presumption," *Burdine, supra,* [450 U.S.] at 254, n. 7, 101 S.Ct., at 1094, n. 7. The element of replacement by someone under 40 fails this requirement. The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40–year–old is replaced by a 39–year–old than when a 56–year–old is replaced by a 40–year–old.

*Id.* at 311–12, 116 S.Ct. at 1310. A far more reliable indicator of age discrimination, according to the Supreme Court, is the fact that the replacement is "substantially younger" than the plaintiff. *Id.* at 313, 116 S.Ct. at 1310.

Even prior to the *O'Connor* decision, the Eighth Circuit required a showing in ADEA cases that a discharged employee was replaced by a "sufficiently younger" person. *See Rinehart v. City of Independence, Mo.,* 35 F.3d 1263, 1269 (8th Cir. 1994). The same showing of a "sufficient" age difference has also been required in a failure-to-hire case before an inference of age discrimination will arise. *See Schiltz*

*v. Burlington Northern R.R.*, 115 F.3d 1407, 1413 (8th Cir.1997). I cannot discern any reason why a plaintiff in a failure-to-promote case should not also be subject to this evidentiary requirement, nor any reason why this modification to the *McDonnell Douglas* presumption should not apply to an equal protection claim of age discrimination. Indeed, this modification seems particularly appropriate for a constitutional claim, which is not dependent upon statutory age classifications.

In the present case, the evidence merely shows that Lobdell was younger than Stalhut, who was forty years old at the time of the promotion. Because there is no evidence of any significant age disparity between the two candidates, a prima facie case of discrimination has not been established under this modified *McDonnell Douglas* test. Consequently, if Stalhut's age discrimination claim is to survive the defendant's summary judgment motion, he will need to produce direct evidence of intentional discrimination and make this a "mixed motives" case which will be subject to analysis under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).[9] I will examine this possibility after concluding my *McDonnell Douglas* analysis of Stalhut's gender discrimination claim.

■ Because he is a male, Stalhut's gender discrimination claim also requires modification of the *McDonnell Douglas* test. The Eighth Circuit has held that in order to establish a prima facie case of reverse discrimination, a plaintiff either must present direct evidence or else show "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Duffy*, 123 F.3d at 1036 (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir.1992) (internal quotations and citations omitted)).

In *Duffy*, the male plaintiff had applied for and was qualified for appointment to a chief probation officer position which a panel of district court judges ultimately awarded to a female applicant. As "background circumstances," the plaintiff alleged that he was substantially more quali-

---

9. The premise of "pretext" case, as analyzed under *McDonnell Douglas*, is that only one motive—either unlawful discrimination or a legitimate consideration, but not both—caused the decision being challenged. *See Foster v. University of Arkansas*, 938 F.2d 111, 115 (8th Cir.1991) (citing *Bibbs v. Block*, 778 F.2d 1318, 1320–21 (8th Cir.1985) (en banc)). Consistent with the *Price Waterhouse* analysis, the Eighth Circuit has held that in a "mixed motives" situation, the plaintiff must show that a discriminatory purpose was a motivating factor in the promotion decision. If the defendant then fails to carry the burden of establishing that the same decision would have been made absent the discriminatory motive, an equal protection violation is established. *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir.1986). *See also Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1351 (8th Cir.1988) (holding that for § 1983 purposes, the "same decision" analysis that was employed in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), goes to liability rather than merely remedy). While the Civil Rights Act of 1991 effectively overruled *Price Waterhouse* to the extent that it permitted an employer in a Title VII case to avoid all liability based upon the "same decision" analysis, *see* 42 U.S.C. § 2000e 5(g)(2)(B), this legislation does not affect liability under § 1983 or, for that matter, under the ADEA. *See Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* (Feb.1999), p. 73 n. 3 ("It bears emphasis that a 'motivating factor' finding in a Title VII case establishes the defendant's liability in a Title VII case, while the defendant in an ADEA, § 1981, or § 1983 case may still prevail on the issue of liability if there is a favorable finding on the 'same decision' issue.").

fied than the female appointee, that the chief judge had mentioned an interest by someone in the Administrative Office in the recruitment of a female, and that two of the judges on the panel usually hired female law clerks. This was held to be sufficient to create a rebuttable presumption of gender discrimination.

In the present case, Stalhut alleges that he has "much more seniority and experience" than Lobdell, and that Lobdell, who was the only female candidate for the position, was "much lower on the promotion list" than he. (Stalhut affidavit) He also alleges that six weeks prior to the appointment, Casady said that "he was going to promote Terri Lobdell because he couldn't pass up a female with a masters degree." This statement by Casady, if not direct evidence of reverse discrimination on his part, is at least a background circumstance which, when considered in conjunction with the other factors of seniority, experience, and examination results, is enough to establish a prima facie case.

Casady therefore has the burden to articulate a legitimate, nondiscriminatory reason for failing to promote Stalhut. While I have determined that this burden of production has shifted to Casady only with respect to the gender discrimination claim, the discussion which follows would be equally applicable to Stalhut's age dis-

crimination claim, had he been able to establish a prima facie case.

### b. Legitimate, Non–Discriminatory Reason

■ Under the second-stage of the *McDonnell Douglas* burden-shifting analysis, a defendant may rebut a presumption of discrimination with evidence "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Casady says that Lobdell was nominated for the promotion "by a large number of the command staff officers," while Stalhut was not nominated at all. (Casady affidavit, ¶¶ 9–10) He also says that Lobdell "distinguished herself with a graduate degree." (Casady affidavit, ¶ 10) This evidence clearly is sufficient to rebut the presumption of discrimination that is created by Stalhut's prima facie case.[10] *See Duffy*, 123 F.3d at 1037 (defendants met their burden of production by offering affidavits which stated that the female candidate was selected based upon her experience, education, and demeanor during the interview, as well as the strong recommendations of other jurists). *See also Cardenas v. AT & T Corp.*, 245 F.3d 994, 999 (8th Cir.2001) (plaintiff's absence from a promotability list was a legitimate, nondiscriminatory reason for defendant's failure to promote him).

---

**10.** "The *McDonnell Douglas* framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff." *Dammen v. UniMed Medical Center*, 236 F.3d 978, 980 (8th Cir.2001). "This burden [of production] is not onerous, and the explanation need not be demonstrated by a preponderance. The defendant need not persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of

fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant offers a facially nondiscriminatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates and it is left for the trier of fact to determine whether the plaintiff has proven that the defendant's action was motivated by discrimination." *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir.1998) (quoting *Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 150 (8th Cir.1997)).

### c. Pretext

As evidence that the non-discriminatory reasons which have been articulated by Casady for his decision to promote Lobdell are pretextual, Stalhut relies upon the "background circumstances" of his prima facie case of gender discrimination, namely, that he had much more seniority and experience than Lobdell, that he scored much higher on the test than she did, and Casady informed him six weeks in advance that Lobdell, the only female candidate, was going to be promoted.[11]

The Eighth Circuit has indicated that where, as here, the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision. *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 864 (8th Cir.1997). While the defendant's evidence on this point is meager, it must be remembered that the plaintiff has the burden of proof.

■ Stalhut's bald assertions that he had "much more" seniority and experience than Lobdell, and that Lobdell placed "much lower" on the promotion list, are insufficient to support an inference of pretext. *See Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *Palesch v. Missouri Com'n on Human Rights,* 233 F.3d 560, 570 (8th Cir.2000) (plaintiffs' general allegations and unsubstantiated opinion testimony were insufficient to raise a material fact issue as to pretext); *Davenport,* 30 F.3d at 945 (unsubstantiated deposition testimony did not create genuine dispute on the issue of pretext or on the ultimate issue of intentional discrimination). "For a plaintiff to survive summary judgment, she must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." *Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 717 (8th Cir.2000), *cert. denied,* — U.S. ——, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001).

Merely disputing Casady's reasons is insufficient; Stalhut "must show 'both that the reason was false, and that discrimination was the real reason.'" *Stuart v. General Motors Corp.,* 217 F.3d 621, 634 (8th Cir.2000) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993)). That is, the plaintiff must present evidence which, first of all, creates a fact issue as to whether the employer's proffered reasons are mere pretext, and, secondly, creates a reasonable inference that the adverse employment decision was an act of intentional discrimination. *See McCullough,* 140 F.3d at 1127 citing *Rothmeier,* 85 F.3d at 1334.

Even accepting as true that Stalhut was better qualified than Lobdell in terms of seniority, experience, and test scores, such evidence does not tend to disprove Casady's explanation that he only considered candidates who were nominated by the command staff, and that he selected Lobdell from among the nominated candidates because of her education. While evidence that an employer hired a less qualified candidate for a position can support a finding that the employer's nondiscriminatory

---

11. Additional evidence of pretext on the age discrimination claim would include Casady's statement that "no one over forty is likely to be promoted," and the fact that at least five persons who received promotions during a two-year period were younger than Stalhut (although the plaintiff's affidavit does not state the total number of promotions that were made during this period).

reason for the hiring was pretextual, identifying those strengths that constitute the best qualified applicant is a role best left to employers. *Duffy*, 123 F.3d at 1038. Federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Id.* (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995)). On the evidence presented, I can see no reason to second-guess Casady's judgment that the best qualified applicants are those who have been recommended for promotion by the command staff officers.

 Stalhut's contention that Casady had selected Lobdell for the promotion prior to receiving the recommendations also does not create a fact issue as to whether the screening process was mere pretext. Even if it could be inferred from Casady's alleged statement that "he couldn't pass up a female with a masters degree" that the nomination process was skewed in favor of Lobdell, it is undisputed that Stalhut's name did not appear on any of the lists of "top three" candidates that were submitted to Casady by the 19 command staff officers. Considering that other male candidates were nominated for the

position, it would be sheer speculation to conclude that the plaintiff was eliminated from contention because of his gender rather than because of his qualifications.[12]

### 2. *Price Waterhouse* Analysis

The two-stage *Price Waterhouse* standard applies when direct evidence is produced that an illegitimate criterion played a motivating part in the employment decision. Once the plaintiff establishes such direct evidence, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. *See Cronquist*, 237 F.3d at 924.

### a. Plaintiff's Direct Evidence of Discrimination

 "Direct evidence is that which demonstrates a specific link between the challenged employment action and the alleged animus." *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 835 (8th Cir. 2000). Stated somewhat differently, it is "evidence of conduct or statements by persons involved in the decisionmaking process that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th

---

12. Stalhut makes a marginally better case of pretext with regard to his age discrimination claim by presenting evidence that Casady stated to him "a belief that no one over forty is likely to be promoted." Even so, it is speculative to conclude that Casady's stated belief somehow caused Stalhut not to be nominated by the command staff. Thus, while Stalhut states in his affidavit that he "has witnessed many sessions [when command staff have been present] in which the Chief is very vocal and adamant regarding his policies on such things as hiring," he does not state that Casady on any of these occasions expressed a preference for hiring sergeants who are under forty. This evidentiary gap is critical, since proof that the nomination process was inten-

tionally discriminatory could overcome the plaintiff's failure to establish a prima facie case of age discrimination. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 682–83 (8th Cir.1996) (finding that plaintiff did not establish prima facie case of discrimination in a failure-to-promote case where she was ineligible due to the previous removal of her name from the applicant waiting list, but noting that if plaintiff "had produced any evidence that the removal of her name from the list was an act of intentional discrimination, aimed at preventing her promotion because she is black, then her failure to establish the usual prima facie case would not, by itself, doom her case.").

Cir.1999). *See also Cronquist*, 237 F.3d at 925 (stating that direct evidence must be "sufficient to permit the factfinder to *infer* that [the alleged discriminatory] attitude was more likely than not a motivating factor in the employer's decision") (emphasis supplied).

Thus, in the context of *Price Waterhouse*, "direct evidence" is not used in its hornbook sense. "[T]here is no restriction on the type of evidence a plaintiff may produce to demonstrate that an illegitimate criterion was a motivating factor in the challenged employment decision. The plaintiff need only present evidence, be it direct or circumstantial, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision." *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200, 201 n. 1 (8th Cir.1993).

Stalhut swears in his affidavit that Casady told him that "no one over forty is likely to be promoted." Viewed in the light most favorable to the plaintiff, this statement may be taken as evidence that Casady was adverse to promoting persons who are over forty years old.[13] *See, e.g., Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir.1991) (holding that a statement by a company president, who actively participated in the personnel decision at issue, that "older employees have problems adapting to changes and to new policies," constitutes direct evidence of age discrimination). It cannot reasonably be inferred from this statement alone, however, that Stalhut's age was a motivating factor in the decision not to promote him. This is because the evidence shows that Stalhut was eliminated from consideration by his failure to garner even a single nomination as a top candidate by the command staff.

Stalhut argues that Casady should not be able to use the command staff to shield himself from liability, but it is undisputed that Casady has always relied upon the promotion recommendations that are made by his captains and assistant chiefs. Given this fact, Casady cannot be held personally liable for his promotion decision unless he played a part in eliminating Stalhut from final consideration. *See, e.g., Reynolds v. Glynn County Bd. of Educ.*, 968 F.Supp. 696, 706 (S.D.Ga.1996) (members of county board of education were entitled to qualified immunity from liability in job applicant's claim under § 1983 resulting from their hiring decision, where they were not connected with selection committee's decision to cut applicant in first round, so that he was not among candidates they considered), *aff'd*, 119 F.3d 11 (11th Cir.1997); *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp.2d 1273, 1285–86 (school board member could not be held liable under § 1983 for black applicant's nonselection as school's head basketball coach unless plaintiff could show a causal connection between board member's discriminatory animus and superintendent's decision to recommend a different candidate); *Cardenas*, 245 F.3d at 1000 (finding no liability on part of senior company official

---

**13.** This is not to say that a policy of not promoting police officers to the rank of sergeant after age forty is necessarily unconstitutional. There might be a rational basis for such a policy. At this point, though, the defendants have simply denied the existence of such a policy, and have not offered any justification for discriminating on the basis of age in the promotional process. Accordingly, I will assume that the plaintiff's age was not a legitimate consideration. *See Moreland v.*

*U.S.*, 968 F.2d 655, 660 (8th Cir.1992) (a plaintiff, who is not a member of a suspect class, prevails on an equal protection claim "if (1) persons who are similarly situated are treated differently by the government, and (2) the government fails to provide a rational basis for the dissimilar treatment.") citing *Cleburne*, 473 U.S. at 439–41, 105 S.Ct. at 3254–55. *See also Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir.1996) (applying same test).

who signed the approval papers for promotions which were effectively made at a lower level). *Cf. Morse v. Southern Union Co.,* 174 F.3d 917, 922 (8th Cir.) (company president's statements to supervisors, expressing a strong preference for younger employees, were sufficient evidence of intentional discrimination even though he was not involved in the decision to terminate the plaintiff's employment), *cert dismissed,* 527 U.S. 1059, 120 S.Ct. 29, 144 L.Ed.2d 832 (1999).

Thus, to demonstrate a specific link between Casady's alleged discriminatory attitude and the actual decision that he made in December 1998, the plaintiff must show that Casady's attitude influenced the nominations he received from the command staff officers, such that the plaintiff, because of his age, was not included in the list of top candidates from which Casady made his selection. Stalhut's proof on this point is limited to his affidavit statements that: (1) during the two-year period in which Stalhut sought a promotion, at least five younger officers were nominated and promoted to sergeant instead of him; and (2) Stalhut "has witnessed many sessions in which the Chief is very vocal and adamant regarding his policies on such things as hiring," and that "the command staff have been present when Chief Casady has vocalized his policies in an adamant manner."

This circumstantial evidence is not sufficient to support an inference that Casady's alleged discriminatory animus more likely than not was a motivating factor in the decision not to promote Stalhut. Although Stalhut implies that only younger officers were nominated and promoted to sergeant, his affidavit does not state this fact. Similarly, while the affidavit gives the impression that Casady's "vocal and adamant" statements to staff about hiring policies

included statements that reflected a bias against promoting 40 year olds to the rank of sergeant, this fact is not stated. The plaintiff's case cannot rest upon such a series of inferences. "Simply because a discriminatory reason might be inferred ... does not mean that a mixed motive case exists." *Cronquist,* 237 F.3d at 925–26 (quoting *Schleiniger v. Des Moines Water Works,* 925 F.2d 1100, 1101 (8th Cir. 1991)).

While Stalhut is entitled to the benefit of all reasonable inferences, he is "not entitled ... to the benefit of unreasonable inferences." *See Caudill v. Farmland Industries, Inc.,* 919 F.2d 83, 86 (8th Cir. 1990) (quoting *Marcoux v. Van Wyk,* 572 F.2d 651, 653 (8th Cir.1978)). Reasonable inferences are "inferences which may be drawn from the evidence without resort to speculation." *Id.* (quoting *Hauser v. Equifax, Inc.,* 602 F.2d 811, 814 (8th Cir. 1979)). *See also Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991). On the evidence presented, a finding that the plaintiff's age was a motivating factor in the promotion decision could only be a product of speculation. Casady is therefore entitled to summary judgment on the age discrimination claim.

Stalhut also swears that Casady said that he was going to promote Lobdell because "he couldn't pass up a female with a masters degree." Casady concedes that after Lobdell's promotion he may have told Stalhut that "it's hard to pass up a woman with a master's degree," but contends that he was merely trying to give Stalhut a suggestion for improving his chances for promotion. If, in fact, Casady used the word "woman" rather than "female" in referring to Lobdell, then his statement does not "reflect a discriminatory attitude" or demonstrate a "discriminatory animus in the decisional process." [14] *Beshears,* 930

---

14. As with the age discrimination claim, the defendants do not admit that there is in fact a

departmental policy which favors the pro-

F.2d at 1354. Used in this context, "woman" essentially is synonymous with "person."[15] If, on the other hand, Casady used the term "female," then I think his statement would be unusual enough to support a finding that Lobdell's gender was a motivating factor in the decision to promote her.[16] Because there is a factual dispute as to what was actually said, the plaintiff must prevail on this point.

The plaintiff's case is not made, however, simply by showing that Lobdell received the promotion because she is female; rather, it must be shown that the plaintiff was denied the promotion because he is male. To establish a violation of § 1983, the plaintiff must show that the defendant's unconstitutional action was a "cause in fact" of the plaintiff's injury. *See Calloway v. Miller*, 147 F.3d 778, 781 (8th Cir.1998). Evidence that Casady decided to promote Lobdell before learning who were the "top three" choices of each of the command staff officers does not establish that Stalhut was a victim of gender discrimination where he was not even nominated for the promotion, but other male officers were. *See, e.g., Beverly v. Widnall*, 172 F.3d 878, 1999 WL 54967 at *3 (10th Cir.1999) (Table) (as a matter of

law, plaintiff could not show that racial animus was a motivating factor in defendant's failure to promote him where another African American candidate was rated higher and would have been selected for the position before plaintiff). Because there is no evidence that Casady's alleged conduct was a proximate cause of Stalhut's failure to be nominated for the promotion, I conclude that Casady is also entitled to summary judgment on the gender discrimination claim.

### b. Defendant's "Same Decision" Evidence

Because I have found that Stalhut has failed to show a causal connection between Casady's allegedly discriminatory remarks and the promotion decision, Casady does not need to demonstrate that he would have made the same decision regardless of any discriminatory motives on his part. Assuming, though, that Casady did have this burden of proof as to either or both claims of discrimination, I would find that his evidence is also lacking.

Although Casady has explained that he selected Lobdell for the promotion because she was nominated by the command staff and she distinguished herself from the oth-

---

motion of female officers. Thus, there is no occasion to consider whether Casady made his decision pursuant to a bona fide affirmative action plan. *See, e.g., Maitland v. University of Minnesota*, 155 F.3d 1013, 1016 (8th Cir.1998) (test for the constitutionality of an affirmative action plan is whether it is remedial and narrowly tailored in response to a conspicuous gender imbalance); *Donaghy v. City of Omaha*, 933 F.2d 1448, 1458 (8th Cir.1991) (in a reverse discrimination case, satisfaction of the four-part *McDonnell Douglas* test will not necessarily show a prima facie violation of section 1983 where the evidence demonstrates that the plaintiff's treatment by the employer was pursuant to a bona fide affirmative action plan).

15. "WOMAN, FEMALE, LADY are nouns referring to adult human beings who are biolog-

ically female; that is, capable of bearing offspring. WOMAN is the general term. It is neutral, lacking either favorable or unfavorable implication, and is the most commonly used of the three...." *Random House Webster's Unabridged Dictionary*, p. 2185 (2nd ed.1997).

16. "*Female* (the correlative of *male* ) emphasizes the idea of sex; it applies not only to human beings but also to animals and plants. Its ordinary use as a synonym for *woman* was once frequent ... but this use is now felt as derogatory or contemptuous except in strictly scientific or statistical application,.... *Woman* is preferred by many whenever the reference is to the person merely as a person...." *Webster's New Dictionary of Synonyms*, p. 332 (1984).

er nominees because of her master's degree, he has not presented any evidence to explain why Stalhut, who placed higher on the sergeant's examination and had more experience on the police department, was not also nominated.[17] On the record presented, I would be unable to find that Stalhut's age or gender were not determining factors in the promotional process.

## B. Objective Legal Reasonableness

Because I have found that Casady's conduct did not violate Stalhut's clearly established rights, it is not necessary to consider whether a reasonable official could have thought that such conduct was lawful.

## III. CONCLUSION

To summarize, I have found that: (1) the plaintiff has failed to establish a prima facie case of age discrimination under a modified *McDonnell Douglas* test because he has not shown that a sufficient age difference exists between himself and the officer who received the promotion; (2) the plaintiff does have a prima facie case of gender discrimination under a modified *McDonnell Douglas* test, but he has failed to establish that the reasons given by Casady for the promotion decision were pretextual; and (3) the plaintiff has not presented direct evidence of either age or gender discrimination. Consequently, Casady is personally immune from suit.

IT IS ORDERED that the defendant's motion for summary judgment on the basis of qualified immunity (filing 15) is granted with respect to all claims that are alleged

against Tom Casady in his individual capacity.

---

**17.** Even with such evidence, it is likely that "reasonable minds could differ as to the import of the evidence," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), so as to present a jury issue. The inquiry on a motion for summary judgment, of course, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.