**Application of Connie RODGERS for a Protective Order.**

**No. 73 C 706.**

United States District Court, E. D. New York.

June 6, 1973.

---

2. See Restatement of Torts (Third), Sec. 729 (d).

Robert A. Morse, U. S. Atty., E.D.N.Y., Brooklyn, N. Y., by Denis E. Dillon, Attorney in Charge, Organized Crime Section, David J. Ritchie, Sp. Atty., U. S. Dept. of Justice Brooklyn, N. Y., of counsel, for the Government.

Greenspan & Aurnou by Joel Martin Aurnou, White Plains, N. Y., for petitioner.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Connie Rodgers, who appeared as a witness before the Special May 1972 Grand Jury, Eastern District of New York, and was photographed, moves for a protective order directing the destruction of the photograph and the suppression of any evidence obtained directly or indirectly by use of such photograph. For the reasons set forth below the motion is denied.

On May 14, 1973, petitioner, pursuant to subpoena ad testificandum, appeared before the Special May 1972 Grand Jury to give testimony in an ongoing investigation. At the close of her testimony petitioner was ordered to stand in order that her photograph might be taken. Her attorney objected and all parties appeared before the court for a ruling. Petitioner's attorney demanded a representation from government counsel that petitioner had not been subpoenaed as a result of evidence garnered by wiretapping or eavesdropping. The assurance was given and petitioner then consented, on advice of counsel, to being photographed.

Petitioner, now wishing to revoke her consent to further use of her photograph in the Grand Jury investigation, argues that it was given without knowledge that the procedure was violative of her Fourth and Fifth Amendment rights.

United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67, and United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99, recently decided by the Supreme Court, are dispositive of the issue. In *Dionisio* the Court, citing Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1966), and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966), held ". . . that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against self incrimination." Particularly apposite here is the Court's quotation from *Schmerber* reaffirming "that [the] privilege] offers no protection against compulsion to submit to fingerprinting, *photographing* or measurements . . ." *Id.* at 5 of 410 U. S., at 767 of 93 S.Ct. emphasis supplied. Thus petitioner's Fifth Amendment claim must be rejected.

In *Dionisio* the Court again looked to *Schmerber* for the teaching that obtaining physical evidence from a person har-

bors potential for Fourth Amendment violations at two levels—"the 'seizure' of the 'person' necessary to bring him into contact with government agents . . . and the subsequent search for and seizure of the evidence." *Id.* at 6, at 769 of 93 S.Ct.

As to the first, the ·Court found that lacking extraordinary circumstances, a subpoena to appear before a grand jury raises no Fourth Amendment issue. No such claims are proffered here.

As to the second, the Court, in discussing the compulsion of voice exemplars, found no reasonable expectation of privacy meriting Fourth Amendment protection, saying:

> The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's *facial characteristics*, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world. *Dionisio, supra* at 14, at 771 of 93 S.Ct., emphasis supplied.

There is no reason not to apply this teaching to the photographing of petitioner.

Two final issues deserve comment. Petitioner raises the spectre that use of her photograph in the course of the grand jury investigation harbors more potential for error and abuse than the employment of more specific means such as fingerprints and voice exemplars. Although it is conceivable that use of photographs, as well as any other physical evidence procured under the teaching

of ·Schmerber and *Dionisio,* might be subject to abuse, no such allegations are now before the court. Mr. Justice Harlan's opinion in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968), is instructive on the reasonable use of photographs in the course of criminal investigations.

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. *Simmons, supra* at 384, 88 S.Ct. at 971.

■ Also, petitioner's argument that exhibition of her photograph without presence of counsel violates her Sixth Amendment rights is contrary to the law in this circuit. See United States v. Bennett, 409 F.2d 888 (2 Cir.), cert. denied sub nom. Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L. Ed.2d 101 (1969); see also United States v. Ash, 149 U.S.App.D.C. 1, 461 F. 2d 92 (1972), cert. granted 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682.

Accordingly, petitioner's application is denied.

So ordered.