# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1423

_____

Elmer Pace and Linda Pace,

        Appellees,

        v.

City of Des Moines, Iowa,

        Defendant, and

Brian Danner,

        Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Southern
District of Iowa.

_____

Submitted: November 17, 1999

Filed: January 13, 2000

_____

Before McMILLIAN, FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Elmer and Linda Pace brought an action against Officer Brian Danner and the City of Des Moines seeking damages under 42 U.S.C. § 1983 for various acts arising out of a criminal investigation of Mr. Pace conducted by Officer Danner. Officer Danner now seeks a reversal of the district court's denial of his motion for summary

judgment on the ground of qualified immunity on four of the Paces' claims. We affirm in part and reverse in part.

I.

Summary judgment is proper when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). We review a district court's denial of summary judgment *de novo*. *Collins v. Bellinghausen*, 153 F.3d 591, 595 (8th Cir. 1998). Ordinarily, a denial of summary judgment is not a "final" decision and is therefore not immediately appealable. *See* 28 U.S.C. § 1291. A denial of summary judgment on the grounds of qualified immunity, however, may be reviewed on interlocutory appeal when the issue presented "is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9, 105 S. Ct. 2806, 2817 n.9, 86 L. Ed. 2d 411 (1985).

Qualified immunity shields Officer Danner from suit if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information [that he] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) (*per curiam*), quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 1097, 1096, 89 L. Ed. 2d 271 (1986).

In this case, the events in question were precipitated by a report that the Des Moines police received from a woman who claimed to have been attacked by a man with a knife. Based on the victim's description of her assailant, the Des Moines police department suspected Mr. Pace. Officer Danner proceeded to the house where Mr. Pace and his wife maintained both a business and a residence. Officer Danner entered the house through the customer entrance, flashed his firearm, told Mr. Pace to

step outside, and pushed Mr. Pace against a wall. Officer Danner then ordered Mr. Pace to remove his shirt so that he could photograph the tattoo on Mr. Pace's chest, and Mr. Pace complied. Mr. Pace asserts that this incident constituted an unlawful search and seizure, as Officer Danner lacked probable cause and failed to obtain a warrant prior to seizing and photographing Mr. Pace.

Officer Danner makes several arguments supporting his motion for summary judgment on this issue. First, he argues that Mr. Pace consented to the search, and therefore that a reasonable police officer clearly could have believed that the search of Mr. Pace was lawful. Mr. Pace disputes this version of the events, however, and contends that he removed his shirt only after Officer Danner ordered him to do so. At the heart of this argument is a dispute of fact -- whether or not Mr. Pace consented to the search. The argument does not, therefore, present a "purely legal issue," and may not be considered by us on interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 313, 115 S. Ct. 2151, 2156, 132 L. Ed. 2d 238 (1995).

Officer Danner also maintains that detaining and photographing Mr. Pace without his consent was permissible under the fourth amendment. As the Supreme Court stated in *United States v. Dionisio*, 410 U.S. 1, 8, 93 S. Ct. 764, 769, 35 L. Ed. 2d 67 (1973), "the obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels -- the 'seizure' of the 'person' necessary to bring him into contact with government agents ... and the subsequent search for and seizure of the evidence."

Officer Danner addresses the detention question with the assertion that he had a reasonable suspicion that Mr. Pace was the assailant, entitling him to detain Mr. Pace briefly for an investigative stop. Officer Danner then contends that his subsequent order for the removal of Mr. Pace's shirt was legitimate because Mr. Pace did not have a reasonable expectation of privacy for his upper body. Officer Danner notes that on "two or three" other occasions another officer had seen Mr. Pace in public wearing tank top shirts that partly revealed the tattoo on Mr. Pace's chest, and yet another officer

claimed to have seen Mr. Pace wearing tank top shirts "numerous" times over the past several years. Officer Danner suggests that given this behavior, Mr. Pace could not reasonably expect that the surface of his upper body, and in particular his tattoo, could be kept private.

We assume, <u>arguendo</u>, that Officer Danner had sufficient reasonable suspicion to detain Mr. Pace, and that the detention occurred in a public place (and not in Mr. Pace's residence). We still reach the conclusion that Officer Danner's actions were contrary to the fourth amendment, and that no reasonable officer could have believed otherwise in light of clearly established law.

We are aware that "the Fourth Amendment provides no protection for what 'a person knowingly exposes to the public, even in his own home or office.' " *Dionisio*, 410 U.S. at 14, 93 S. Ct. at 771, quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967). Courts applying this principle have suggested that the protection of the fourth amendment may be wholly denied to voices, faces, and fingerprints. *See Dionisio*, 410 U.S. at 14, 93 S. Ct. at 771 (voice exemplar); *Application of Rodgers*, 359 F. Supp. 576, 577-78 (E.D. N.Y. 1973) (photograph of face); and *Hayes v. Florida*, 470 U.S. 811, 816-17, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985) (fingerprints).

We think, however, that the analogy that Officer Danner seeks to draw between the state action in those cases and his conduct in this one is untenable. There is a legally relevant distinction between the daily revelations of one's voice, face, and fingerprints that are an inevitable part of living in an interactive world, on the one hand, and the occasional use of a tank top on the other. Although it is perhaps possible to imagine a person who so consistently bares himself or herself from the waist up that all reasonable expectations of privacy for that area are lost, wearing a tank top "two or three" times (or even "numerous" times) is surely not enough to produce so drastic a result. Were we to find otherwise, regular visitors to public beaches and swimming pools would be surprised to discover that their visits have cost them the lasting loss of

a reasonable expectation of privacy over very substantial portions of their bodies. We do not believe that any reasonable interpretation of *Dionisio* and its progeny could lead to such a conclusion.

We also disagree with Officer Danner's second contention, namely, that a reasonable officer could have believed that the photographing was within the permissible limits of an investigative stop. We recognize that an officer who has a reasonable suspicion that crime is afoot, but not probable cause to arrest a person, may conduct an investigative stop, and that this may include questioning and other efforts to identify the person in question. *See United States v. Johnson*, 64 F.3d 1120, 1124 (8th Cir. 1995), *cert. denied*, 516 U.S. 1139 (1996), and *United States v. Jones*, 759 F.2d 633, 642 (8th Cir. 1985), *cert. denied*, 474 U.S. 837 (1985).

If a stop lasts too long, however, or if it is too intrusive, "then the stop is converted into an arrest." *United States v. Dixon*, 51 F.3d 1376, 1380 (8th Cir. 1995). In determining whether an officer's conduct goes beyond what is permissible in an investigative stop, we are bound to consider " 'the degree of fear and humiliation that the police conduct engenders.' " *United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (*en banc*), *cert. denied*, 514 U.S. 1113 (1995), quoting *United States v. Lego*, 855 F.2d 542, 545 (8th Cir. 1988); *see also United States v. Hill*, 91 F.3d 1064, 1070 (8th Cir. 1996). In this case, although it may be true that Officer Danner photographed Mr. Pace as quickly as possible, we believe that Officer Danner's actions were too intrusive to be considered merely part of an investigative stop rather than a search fully implicating Mr. Pace's fourth amendment rights. It is apparent to us that being ordered to go outside and to take off one's shirt so that a police officer can take pictures involves much more fear and humiliation than simply being asked questions or being compelled to identify oneself.

We believe that a reasonable officer cognizant of clearly established law would realize that such an imposition requires a warrant, something that Officer Danner did

not obtain. In these circumstances, therefore, we do not believe that Officer Danner is entitled to qualified immunity for the photographing incident.

## II.

After obtaining a photograph of Mr. Pace's tattoo, Officer Danner conducted an interview with the victim of the assault. He showed the victim a photo lineup of the faces of six men and asked if she could identify her assailant. The victim was able to rule out four of the six prospects, but was uncertain about the last two. After some prodding by Officer Danner, she assigned a "60-65 percent" probability that one of the men pictured was her assailant, and a "10 percent" probability that the other man pictured (who was Mr. Pace) was her assailant. Officer Danner then showed her a picture of Mr. Pace alone, and the victim stated that she did not think that Mr. Pace's hairline matched that of her assailant. The victim was also unable to identify either of two bicycles belonging to Mr. Pace as the bicycle on which her assailant escaped.

Officer Danner subsequently showed the victim two pictures of Mr. Pace without his shirt on, revealing the tattoo. Upon seeing these final pictures the victim said, "oh, man," and became visibly upset. She said "that looks just like it," and proceeded to state that the tattoo, shoulders, and arms in the picture looked like those of her assailant. At the conclusion of the interview the victim stated that she was "85-90 percent" sure that the man pictured with the tattoo was her assailant. Mr. Pace contends in his claim for malicious prosecution that this identification procedure was impermissibly suggestive and that it was the proximate cause of the state's decision to prosecute him.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show a deprivation of a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). We do not believe that Mr. Pace's allegations of malicious prosecution even state a claim for which relief can be granted under § 1983. It is well established in this circuit that "[a]n action for malicious prosecution by itself is not punishable under § 1983 because

-6-

it does not allege a constitutional injury." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993); *see also Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999).

In the context of unduly suggestive lineups, only a violation of the core right -- the right to a fair trial -- is actionable under § 1983. *See Hensley v. Carey*, 818 F.2d 646, 648-49 (7th Cir. 1987), *cert. denied*, 484 U.S. 965 (1987). The jurisprudential doctrine described in *Manson v. Brathwaite*, 432 U.S. 98, 113 n.13, 97 S. Ct. 2243, 2252 n.13, 53 L. Ed. 2d 140 (1977), against the admission of unduly suggestive lineups is only a procedural safeguard, and does not establish a constitutional right to be free of suggestive lineups; *see also Hensley*, 818 F.2d at 648. In this case, Mr. Pace's claim for malicious prosecution does not allege that his trial was unfair.

A court deciding the issue of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, ___, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999). Since we conclude that Mr. Pace failed to allege sufficient facts to support a claim that he was deprived of a constitutional right, we also conclude that Officer Danner is entitled to summary judgment on the ground of qualified immunity on the malicious prosecution claim.

## III.

After interviewing the victim, Officer Danner interviewed two other witnesses, neither of whom could positively identify Mr. Pace. Officer Danner then discussed the case with a county prosecutor, and together they sought an arrest warrant for Mr. Pace. Mr. Pace was subsequently arrested and detained; he was ultimately acquitted at a trial. Mr. Pace claims that there was inadequate probable cause to support his arrest and subsequent detention.

Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person arrested committed the crime with which he was charged. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142 (1964). When the plaintiff in an action under § 1983 contends that an officer acted without probable cause, the officer is entitled to qualified immunity unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *George v. City of St. Louis*, 26 F.3d 55, 57 (8th Cir. 1994). As this standard makes clear, there need not be actual probable cause for an officer to be shielded by qualified immunity; an objectively reasonable belief that there was probable cause is enough. *See Hunter*, 502 U.S. at 228-29, 112 S. Ct. at 537; *see also Thompson v. Reuting*, 968 F.2d 756, 760 (8th Cir. 1992).

When the district court in this case considered the application of qualified immunity, it stated that a plaintiff can defeat a motion for summary judgment on the grounds of qualified immunity if the following three elements are present: an asserted violation of a constitutional right, a demonstration that the right was clearly established, and "a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right." The district court found that Mr. Pace claimed violations of clearly established constitutional rights, and that he raised a genuine issue of fact "as to whether Danner should have known that his conduct would violate [these] right[s]." The district court therefore held that Officer Danner was not entitled to immunity.

The inquiry outlined by the district court in this case is a restatement of the standard frequently used in this circuit to evaluate motions for summary judgment on the ground of qualified immunity. *See*, *e.g.*, *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999); *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996); and *Cross v. City of Des Moines*, 965 F.2d 629, 631-32 (8th Cir. 1992). The restatement is, however, incomplete. Courts deciding questions

of qualified immunity must also recognize that "whether summary judgment on grounds of qualified immunity is appropriate from a particular set of facts is a question of law." *Lambert*, 187 F.3d at 935.

Of course, the burden remains on the proponent of the immunity to establish the relevant predicate facts, and at the summary judgment stage the nonmoving party is given the benefit of all reasonable inferences. *See Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground. *See Lambert*, 187 F.3d at 935. What must be kept in mind, however, is that once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. The conduct was either "reasonabl[e] under settled law in the circumstances," *Hunter*, 502 U.S. at 228, 112 S. Ct. at 537, or it was not, and this is a determination of law that should be made at "the earliest possible stage in litigation," *id.* at 227.

We restate for emphasis that whether an officer "acted reasonably under settled law in the circumstances," *id.* at 228, is a question of law, and not itself a predicate fact. "Predicate facts" include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions. When there is no dispute among the parties as to the relevant facts, as is the case here with Mr. Pace's unlawful arrest and detention claim, a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity -- that is, whether or not the officer acted reasonably under settled law given the particular set of facts.

We note that this approach is in accord with our cases as well as those of the Supreme Court. As the Supreme Court explained in *Hunter*, qualified immunity is " 'an *immunity from suit* rather than a mere defense to liability' " (emphasis in original), *Hunter*, 502 U.S. at 227, 112 S. Ct. at 536-37, quoting *Mitchell*, 472 U.S. at 526, 105

S. Ct. at 2815, and its availability "ordinarily should be decided by the court long before trial," *Hunter*, 502 U.S. at 228. Qualified immunity is intended to protect officials from the "disruption and expense of trial," *Greiner v. City of Champlin*, 27 F.3d 1346, 1351-52 (8th Cir. 1994), among other things, and this purpose is defeated if officials must always endure a trial in order to avail themselves of the immunity. *See Mitchell*, 472 U.S. at 526.

Regarding Mr. Pace's claims of unlawful detention and arrest, the relevant predicate facts are, as we have indicated, not in dispute. The victim stated at the conclusion of her interview with Officer Danner that she was "85-90 percent" sure that Mr. Pace was the assailant. "In assessing [the] reliability [of an identification], we consider such factors as the opportunity of the witness to view the suspect during the commission of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the suspect; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1265 (8th Cir. 1996), *cert. denied*, 519 U.S. 867 (1996).

Applying *Brodnicki*, we believe that the victim's statement was sufficiently credible to allow a reasonable officer to believe that probable cause existed. Although the victim said that her attention focused on her attacker's knife, she had a lengthy opportunity to view her attacker and provided a detailed description of him. This description turned out to fit Mr. Pace, with only minor discrepancies. *See Devose v. Addison*, 172 F.3d 632, 633 (8th Cir. 1999). The victim was interviewed by Officer Danner less than 24 hours after her attack, and she ultimately stated with a high level of certainty that Mr. Pace was her attacker.

Mr. Pace contends, however, that Officer Danner conducted the interview in an impermissibly suggestive manner, and that the victim's identification should therefore be eliminated from the probable cause analysis. We disagree. We are persuaded by Officer Danner's argument that the display of Elmer Pace's tattoo is analogous to a one-

man showup, a procedure that does not violate due process.  *See Brodnicki*, 75 F.3d at 1265.  Although one-man showups have been criticized as "inherently suggestive and a practice to be avoided," *United States v. Sanders*, 547 F.2d 1037, 1040 (8th Cir. 1976), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2679 (1977), in this case the suggestive nature of the procedure, if any, diminished, but did not eliminate, the probative value of the identification.  We believe, moreover, that in the present legal context Officer Danner's subjective motive for conducting the interview in the way he did is irrelevant:  The question is whether the technique that he used is objectively reasonable.  In light of the credibility of the statement as evaluated under the *Brodnicki* standard, we believe that the victim's identification was sufficiently probative to allow a reasonable officer to believe that probable cause existed.

We note, moreover, that the victim's identification of Mr. Pace was supported by a number of other facts.  The descriptions provided by the two witnesses to the crime, although not detailed, corroborated the victim's story.  Mr. Pace largely fit the victim's detailed initial description of her assailant, given shortly after the attack.  The assailant's path of escape was in the direction of Mr. Pace's home.  Finally, Mr. Pace had a criminal history that included convictions for assault and carrying weapons (including a knife, the weapon brandished by the assailant).  Even if we were to give no weight to the victim's interview with Officer Danner, we believe it likely that these additional facts would provide enough support for a finding of probable cause to entitle Officer Danner to qualified immunity.  *See Brodnicki*, 75 F.3d at 1265.

IV.

For the reasons stated herein, the district court's denial of summary judgment to Officer Danner on Mr. Pace's claim of unreasonable search and seizure is affirmed, and the district court's denial of summary judgment to Officer Danner on Mr. Pace's claims of malicious prosecution, unlawful detention, and unlawful arrest is reversed.  We remand the case for further proceedings consistent with this opinion.

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.