# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3330

_____

David Allen New

*Plaintiff - Appellee*

v.

Dale Denver

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 16, 2015
Filed: May 29, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Patrol Sergeant Dale Denver of the Benton County Sheriff's Office arrested David New in September 2009 for possession of marijuana after two leaves were found during a consensual search of New's car following a traffic stop. When the Arkansas State Crime Laboratory tested the leaves and reported they did not contain detectible amounts of Tetrahydrocannabinol ("THC"), the prosecutor dropped a

criminal charge that New violated Ark. Code § 5-64-401 (repealed in 2011). New commenced this 42 U.S.C. § 1983 action against Denver, alleging he was arrested without probable cause in violation of the Fourth and Fourteenth Amendments.

Denver moved for summary judgment on the merits and based on qualified immunity. The district court denied the motion, concluding that, at the summary judgment stage, the court could not make "a credibility determination crediting Mr. Denver's assertions as true in the face of contrary evidence -- a negative lab result and the contrary averments of Mr. New." Denver appeals, arguing the undisputed material facts establish he is entitled to qualified immunity as a matter of law. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We agree with Denver's contention and therefore reverse.

## I.

Sheriff's Deputy Kurt Banta stopped New's vehicle for speeding shortly after 8:00 a.m. on a Saturday morning. Banta learned that New and his passenger, New's brother Michael, had prior arrests for marijuana possession. Though claiming to be in a hurry, New gave Banta consent to search the vehicle. Deputy Santos arrived as back-up and waited with the News outside the car while Banta began his search on the passenger side of the front seat. New told Santos there was a knife in the console, which Banta had already found. Supervisor Denver, patrolling in the area, went to the scene and joined Banta, searching from the driver's side of the vehicle. Denver found a dried and curled leaf he identified as marijuana between the driver's seat and the door frame. He advised Banta this was now a probable cause search, and the two searched more aggressively. They found a second leaf on the floor almost under the driver's seat. Denver placed the leaves in a brown sack, arrested David New for possession of marijuana, and submitted the leaves to the crime lab for testing. The

-2-

lab reported, "no controlled substances detected." This lawsuit followed. The two leaves are not part of the summary judgment record.

At his deposition, Denver testified that he had worked for the Sheriff's Office for twenty years and had substantial training and experience in drug interdiction, including serving two years as handler of a drug detection canine. Denver described the two leaves as green with fingers and testified he was "absolutely convinced" they were leaves from one or more marijuana plants, even if they did not test positive for the controlled substance THC. New testified, with equal adamance, that the leaves were not marijuana because he and his brother did not "have marijuana on the property" they had left that morning. New only briefly saw a "finger of a leaf over the corner of this brown paper sack that [Denver] had put them in." He did not recall if the finger came to a point and had only previously seen a marijuana leaf on television. Michael New testified he did not see the leaves but believed they were not marijuana. He recalled that the brothers had tracked wet leaves into the car from their wooded property that morning. By affidavit, the crime lab's forensic chemist averred that, in the absence of THC, the leaves "did not meet criteria to be a positive [marijuana] sample." However, she noted, "there are many variables as to why [marijuana] leaves may not test positive for THC," and the two leaves had "cystolithic hairs, which are found on but not unique to a [marijuana] leaf."

## II.

Qualified immunity shields a government official from liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotation omitted). "Immunity ordinarily should

-3-

be decided by the court long before trial." Id. at 228. We review *de novo* the district court's denial of summary judgment based on qualified immunity.

The Fourth Amendment protects against a warrantless arrest by an officer who lacks probable cause. In a § 1983 action alleging violation of that right, qualified immunity applies when "a reasonable officer *could have believed* [the] arrest to be lawful, in light of clearly established law and the information the arresting officer[] possessed." Id. at 227 (emphasis added). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.) (quotation omitted), cert. denied, 519 U.S. 1011 (1996). When an arrest is for possession of a controlled substance, such as marijuana, probable cause "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband." Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion) (quotation omitted). Thus, a police officer can have probable cause to seize what appears to be a controlled substance that is later determined to be something else. See, e.g., Waltman v. Payne, 535 F.3d 342, 347-48 (5th Cir. 2008); Ochana v. Flores, 347 F.3d 266, 271-72 (7th Cir. 2003).

**A.** "When there is no dispute among the parties as to the relevant facts . . . a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity." Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000). However, if a public official's qualified immunity as well as his Fourth Amendment liability turn on genuine issues of material fact, rather than on an issue of law, we lack appellate jurisdiction because the decision denying qualified immunity is not an immediately appealable collateral order. See Johnson v. Jones, 515 U.S. 304, 313 (1995); Aaron v. Shelley, 624 F.3d 882, 884 (8th Cir. 2010). New argues we lack jurisdiction in this case because the district court's ruling was based upon a genuine issue of material fact, "whether Mr. Denver truly made an honest or

-4-

objectively reasonable mistake in believing the leaves to be marijuana." On the unique facts presented, this threshold issue requires close scrutiny.

Whether an officer is entitled to qualified immunity because he "acted reasonably under settled law in the circumstances" is a question of law for the court, both before and after trial. Hunter, 502 U.S. at 228. Predicate facts that will defeat summary judgment based on qualified immunity "include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions." Pace, 201 F.3d at 1056; see Levan v. George, 604 F.3d 366, 369 (7th Cir. 2010) ("Even if the undisputed facts showed that the officers had made a reasonable error when they arrested [plaintiff], qualified immunity would be available, though not a judgment on the merits."). For example, in Aaron v. Shelley, we dismissed an appeal from the denial of qualified immunity for lack of jurisdiction because the officers' investigation leading up to the plaintiff's arrest was "clouded by material fact disputes." 624 F.3d at 883. In that case, what the officers learned from multiple witnesses before they arrested Aaron required a trial because the material facts were disputed and, viewed most favorably to plaintiff Aaron, "would permit a reasonable jury to find that the officers lacked objectively reasonable probable cause to arrest." Id. at 884.

In this case the critical jurisdictional issue is whether any disputed facts are *material* to the question whether Sgt. Denver could reasonably have believed he had probable cause to arrest David New for unlawful possession of marijuana. The district court concluded that Sgt. Denver's "credibility" was a disputed issue of material fact "in the face of contrary evidence -- a negative lab result and the contrary averments of Mr. New." Here, the court's reference to credibility is logical and highlights the unusual nature of the issue. The Supreme Court has repeatedly emphasized "that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Thus, the Court has held, an arrest that is based upon sufficient

probable cause does not violate the Fourth Amendment because the arresting officer did not correctly identify the law being violated, or because he made a pretextual arrest for another law enforcement purpose. See Whren v. United States, 517 U.S. 806, 812-13 (1996) (collecting cases). Here, however, the *existence* of probable cause turned on Denver's belief that the leaves were marijuana. Qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." Thus, whether the arrest was objectively reasonable for qualified immunity purposes requires an evaluation of the objective credibility of Sgt. Denver's conclusion that the two leaves were marijuana. Our appellate jurisdiction turns on whether there are disputed predicate facts preventing prompt determination of this issue of law.

In our view, the "contrary evidence" cited by the district court is not relevant to this issue. New's contrary opinion and the negative lab report are evidence that the two leaves were not *in fact* marijuana. But neither is, alone or in combination, material to the question of arguable probable cause. Because the Constitution "does not guarantee that only the guilty will be arrested," New's assertion that he was not in possession of marijuana "is largely irrelevant." Baker v. McCollan, 443 U.S. 137, 145 (1979). New testified that he had only seen marijuana leaves on television, and that he only briefly saw a single finger of one leaf sticking out of the bag where Denver put the two leaves. This is not probative evidence that Denver lacked a reasonable, good faith belief that he had probable cause to arrest because he had found two leaves of marijuana in New's car.

Likewise, the subsequent negative lab report does not cast material doubt on Denver's testimony that he believed the two leaves were marijuana. This is hindsight evidence; "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. at 152; see Brodnicki v. City of Omaha, 75 F.3d 1261, 1265 n.5 (8th Cir.) (inconsistent information developed after an arrest "is irrelevant to our probable cause analysis"), cert. denied, 519 U.S. 867 (1996). Moreover, even if

-6-

relevant, the lab report was hardly conclusive. The forensic chemist noted that marijuana leaves may not test positive for THC, and the leaves in question had cystolithic hairs consistent with marijuana leaves. See United States v. Barton, 995 F.2d 931, 936 (9th Cir.) ("evidence suggest[s] that male marijuana plants contain little or no THC"), cert. denied, 510 U.S. 957 (1993). Finally, under Arkansas law, the negative lab report did not require that the charges against New be dropped. See Springston v. State, 936 S.W.2d 550, 550-51 (Ark. 1997) (affirming a conviction for possession of marijuana despite scientific test results that the "presence or absence of THC could not be confirmed" because "lay testimony may provide substantial evidence of the identity of a controlled substance").

New has failed to identify any other material fact disputes that preclude us from deciding whether Denver had arguable probable cause to arrest as a matter of law. Thus, we have jurisdiction to determine that issue.

**B.** Examining the record on appeal for "the facts known to the arresting officer at the time of the arrest," as the Supreme Court requires, we find nothing requiring the conclusion that Sgt. Denver should be denied qualified immunity because he was either "plainly incompetent" or "knowingly violate[d] the law." First, Denver's extensive training and experience in drug interdiction made him an officer whose strong belief that he had found a controlled substance in an automobile was likely to be objectively reasonable, though of course not infallible. In his deposition, Denver generally described the two leaves that he identified as marijuana leaves; his description, while inconclusive, was not contradicted by other evidence. Second, Denver knew that both David New and his brother had prior arrests for marijuana possession; not a conclusive fact, but one that objectively reinforced Denver's belief that the leaves he found in the car were marijuana.

Third, Denver's actions after finding the leaves were consistent with the routine police work by an officer who genuinely believed he had found a controlled

-7-

substance -- Denver put the leaves in a sack, arrested the person in possession, and sent the leaves to the crime lab for controlled substance testing. Finally, there is no evidence that Denver had any prior encounters with David New or his brother, or was pursuing an unrelated investigation. The undisputed facts are consistent with Denver reacting spontaneously to what he found in an unplanned search. He may have been mistaken, but there is no hint that he was knowingly violating the Fourth Amendment.

"The evaluation of evidence to determine if probable cause exists is not an exact science." Brodnicki, 75 F.3d at 1265. On these undisputed facts, we conclude that an objectively reasonable police officer with Sgt. Denver's training and experience could have reasonably believed that the leaves he found in David New's car were marijuana, giving Denver probable cause to arrest and have the leaves tested for THC. New cites no case in which an officer was denied qualified immunity in analogous circumstances, and we have found none. More than evidence of a mistake is required to deny a public official qualified immunity from § 1983 damage liability.

The order of the district court dated October 16, 2013, is reversed. As Dale Denver is entitled to qualified immunity from the only claim asserted in David New's Complaint, the case is remanded with directions to dismiss the Complaint with prejudice.

GRUENDER, Circuit Judge, dissenting.

The court correctly cites *Johnson v. Jones*, which held that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 515 U.S. 304, 319-20 (1995). But the court nonetheless reviews whether the pretrial record here sets forth a genuine issue of fact for trial. Instead, we should follow *Johnson* and dismiss this interlocutory appeal for lack of jurisdiction.

As the court explains, New's § 1983 claim requires an evaluation of the objective credibility of Sgt. Denver's conclusion that the two leaves were marijuana. New argues that "no reasonable officer would have concluded the leaves were marijuana." He testified that the part of the leaf he saw did not look like marijuana "at all"; Denver testified that the leaves were marijuana. Based on this and other evidence, the district court held that "issues of fact remain as to whether Mr. Denver truly made an honest or objectively reasonable mistake in believing the leaves to be marijuana." Under *Johnson*, we cannot review such determinations of "evidence sufficiency." *Id.* at 313; *see also Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc); *Tubbs v. Harrison*, 383 F. App'x 804, 807 (10th Cir. 2010) (dismissing appeal where the district court had "identified a significant disputed issue of fact as [to] whether [defendant police officers] could actually smell marijuana" before they entered plaintiffs' house without a warrant).

Recognizing this limitation, the court finds jurisdiction by deeming New's evidence immaterial rather than "probative" of Sgt. Denver's "reasonable, good faith belief that he had probable cause." *Ante* at 6. But this is simply weighing evidence. Every fact-based summary-judgment ruling asks whether a party's evidence is sufficiently probative. That is how trial courts decide what *Johnson* says we cannot examine: "which facts a party may, or may not, be able to prove at trial." 515 U.S. at 313. As such, to accept the court's analysis undercuts *Johnson* significantly. And, moreover, the court's analysis contradicts our earlier holding that we cannot "decide whether a dispute is genuine by finding certain evidence insufficiently probative." *Livers v. Schenck*, 700 F.3d 340, 350-51 (8th Cir. 2012); *see Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

Accepting the court's analysis also implicates *Johnson*'s concern about increased appellate workloads. As *Johnson* explained, "to determine whether there is or is not a triable issue of fact . . . may require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials."

515 U.S. at 316. The record in this case is hardly vast, but even it contained the forensic chemist's affidavit; excerpts from Sgt. Denver's deposition, New's deposition, and Michael New's deposition; and an incident report. When we face more complicated cases, the court's rule would have us sift through, not the hundred or so pages here, but thousands of pages, carefully sorting for nuggets of probative evidence. This is precisely what *Johnson* chose to forbid.

I am sympathetic to the court's desire to reach the merits. "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability.'" *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Our lack of jurisdiction subjects Denver to continued suit based on what seems like scant evidence. Nonetheless, when the Supreme Court decided *Johnson*, it was aware of the need to protect officials from erroneously permitted trials. *See* 515 U.S. at 315. The Court still held that we cannot review an order deciding "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at 319-20. As such, we should dismiss this appeal for lack of jurisdiction. I respectfully dissent.

———————————————