# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3244
_____

Irene Maria Zimbobway Schwartze Bramblett

*Plaintiff - Appellee*

v.

City of Columbia, Missouri; Michael Matthes

*Defendant*s

Kenneth Burton

*Defendant - Appellant*

Cavanaugh Noce

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: June 16, 2016
Filed: August 4, 2016

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Irene Maria Zimbobway Schwartze Bramblett ("Schwartze") sued the City of Columbia, Missouri ("City"); City Manager Michael Matthes; Chief of Police Kenneth Burton; and Deputy City Counselor Cavanaugh Noce, alleging, *inter alia*, under 42 U.S.C. § 1983 that the City violated her constitutional right to procedural due process in violation of the Fourteenth Amendment by terminating her employment. The defendants moved for summary judgment, which the district court[1] granted in part and denied in part. Relevant to the present appeal, the district court denied the defense of qualified immunity asserted by Chief Burton in response to Schwartze's procedural due process claim.[2] Chief Burton now appeals the denial of qualified immunity. We dismiss the appeal for lack of jurisdiction.

## I. *Background*

Schwartze is a former City employee. Prior to May 14, 2009, she worked as a City police captain. On May 14, 2009, she was appointed temporary Emergency Communications and Management Administrator ("ECM Administrator").[3] At the time of her appointment, she was approximately two years and nine months from becoming eligible for retirement under the police pension plan. Schwartze would have declined the ECM Administrator position if her acceptance would have affected her police pension. To ensure that Schwartze's police-pension eligibility was unaffected, she was paid for her work as ECM Administrator from the City Police Department budget and remained a captain in the department. On October 5, 2009,

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]The district court dismissed Schwartze's claims against Noce, and Matthes has not appealed the district court's denial of qualified immunity.

[3]Although the title of this position changed to "Director of Public Safety Joint Communications and Emergency Management Director" in 2010, we will continue to refer to the position as "ECM Administrator."

Bill Watkins, then acting City Manager, offered Schwartze a permanent position as ECM Administrator. The terms of this job offer were memorialized in a memorandum ("October 5, 2009 Memorandum"), which provided, in relevant part, as follows:

> I am pleased to offer you the position of ECMA for the City of Columbia. Should you agree to accept this offer the following are the terms and conditions of your appointment as Emergency Communications and Management Administrator.
>
> You will remain a Columbia Police Department captain assigned to the position of Emergency Communications and Management Administrator. Your assignment will end when you first become eligible to retire under the police pension plan. At that time you will have the option of either being reassigned in the Police Department or retiring under the police pension plan and continuing as the Emergency Communications and Management Administrator. If you continue as Administrator, you will be covered by the LAGERS retirement system.
>
> You must inform me of your decision to return to the Police Department or remain as Administrator at least six months before you first become eligible for retirement under the police pension plan.
>
> Of course, your assignment to the position of Administrator as well as your option to continue as Administrator is subject to satisfactory job performance.

The following day, Watkins sent a letter to the ECM Administrator Selection Committee—of which Chief Burton was a member—that contained the relevant terms of Schwartze's assignment to ECM Administrator. In relevant part, the letter provided that

> Captain Schwartze has a little over two years service remaining with the CPD until she is eligible to retire and has agreed to remain in this position until that time. Her assignment will end when she becomes

-3-

eligible to retire under the police pension plan. At that time, subject to her continued satisfactory performance, she will have the option of either being reassigned in the Police Department or retiring under the police pension plan and continuing as the Emergency Communications and Management Administrator covered by the LAGERS retirement system.

Because her position as ECM Administrator was funded through a captain position in the City Police Department, Schwartze was paid about $15,000 more than the previous ECM Administrator. Section 21-19 of the Columbia City Ordinances ("City Ordinances") states that "[t]he *chief of police* shall have general supervision and control of the department, including the enforcement of discipline among the members thereof, and the instruction of the members in their duties." (Emphasis added.) However, Schwartze performed no police duties and did not report to Chief Burton after becoming ECM Administrator. She was paid from the City Police Department budget. The police captain position was a "classified" position under the City Ordinances.

In May 2011, Matthes became the City Manager. At that time, the City was operating at a nearly $3 million deficit. Matthes instituted a hiring freeze, and by 2012, the City had accumulated a $1.9 million surplus. During May and several times thereafter, Schwartze indicated to Matthes her intention to retire from the City Police Department in February 2012 and serve solely as the ECM Administrator.

In late 2011 and early 2012, Eric Anderson, an independent consultant, reviewed the administration of the City Police Department. As part of the review, Anderson spoke with Schwartze who made statements critical of Chief Burton but made no such comments of Matthes. Schwartze is unaware of anything that she said to Anderson being relayed to Chief Burton or Matthes.

On January 18, 2012, after Schwartze's meeting with Anderson, Matthes told Schwartze that he was considering eliminating the ECM Administrator position. Schwartze asked Matthes whether she could return to the City Police Department as a captain. Matthes indicated that he would think about it and get back to her.

On February 2, 2012, Schwartze became eligible to draw police-pension benefits. As provided in the October 5, 2009 Memorandum, Schwartze was to have the option to remain as ECM Administrator or return to the City Police Department. In February 2012, Matthes reiterated in a meeting with Schwartze that the City was in the process of eliminating the ECM Administrator position. Matthes told Schwartze that he had spoken with Chief Burton about the elimination of Schwartze's position and her possible return to the City Police Department. Matthes told Schwartze that returning to the City Police Department "was not an option" and "not his decision to make." On February 6, 2012, Chief Burton e-mailed Matthes and complained that Schwartze was "stonewalling."

On May 9, 2012, Matthes gave Schwartze two options. First, she could voluntarily resign and retire from her job as ECM Administrator and begin drawing her police pension. Second, if she declined the first option, her position would be eliminated. Matthes gave Schwartze less than one hour to decide. Schwartze consulted with her attorney and decided not to resign. After being informed of Schwartze's decision, Matthes gave Schwartze a letter stating that she was on administrative leave, effective immediately. At approximately 5:00 p.m., Matthes sent an e-mail to the mayor, City Council, and senior staff stating that Schwartze was on paid administrative leave pending action on the next City Council meeting to amend the budget. Chief Burton then sent an e-mail to the City Police Department stating that Schwartze was no longer a City administrator and that her access to the building was restricted to areas open to the general public unless she was accompanied by an escort. After Deputy Police Chief Stephen Monticelli learned of Schwartze's removal,

-5-

he e-mailed Chief Burton, stating, "Wow, there has to be a story there? She step in it again?" Chief Burton responded, "[W]e will talk later."

Section 19-238 of the City Ordinances provides that "grievances or complaints" other than that regarding a poor job review "must be taken to the person who issued the discipline. Unresolved grievances or complaints will proceed through the department's chain of command as established by the department head." The ordinance further provides that "[g]rievances or complaints must be taken to the person who issued the discipline within seven (7) working days following knowledge of the occurrence of the problem" and that "[t]he person who issued the discipline shall have five (5) working days from receipt of the grievance or complaint to respond in writing."

On May 17, 2012, Schwartze's attorney filed a "Grievance/Complaint/Appeal." Schwartze addressed the grievance to, among others, Chief Burton. In the grievance, Schwartze's attorney wrote, "Since Mr. Matthes is the one who purportedly took the action as to Zim, the Grievance/Complaint/Appeal is directed to him, at the first level, as provided for by 'Step 1' of Section 19-238 of the City's Ordinances. However, *since Chief Burton was her immediate superior*, such Grievance/Complaint/ Appeal is also directed to him, as a part of Step 1." (Emphasis added.)

On June 4, 2012, the City Council voted to eliminate the ECM Administrator position. But, before that date, Matthes had indicated to Schwartze that even if the City Council did not eliminate the position, he would not change his decision to terminate Schwartze.

On June 11, 2012, Matthes denied Schwartze's complaint. On June 14, 2012, Schwartze requested a hearing before the Personnel Advisory Board ("Board"). The City informed Schwartze that layoffs are not subject to hearings before the Board. At no time did Chief Burton respond to the grievance and request for hearing.

-6-

City Ordinance § 19-211 states that laid off employees will be given "first consideration" for the position that was eliminated or similar positions. Employees entitled to first consideration appear on a reemployment list. Following Schwartze's separation of employment from the City, Schwartze asked to be placed on the reemployment list. Captain positions opened in August 2012 and September 2012, but both positions were filed internally. In October 2012, Schwartze applied for the deputy chief of police position and was considered but not selected.

Relevant to the present appeal, Schwartze filed a procedural due process claim under 42 U.S.C. § 1983 against Chief Burton, contending that he violated her procedural due process rights when he terminated her from her job as ECM Administrator and refused to let her return to a job at the City Police Department. Chief Burton moved for summary judgment on the claim, asserting qualified immunity. The district court denied Chief Burton qualified immunity. First, the court found that Schwartze had a property interest in her employment under § 19-237 of the City Ordinances, which sets forth a "just cause" requirement mandating that a classified employee receive due process prior to termination. Chief Burton conceded for purposes of summary judgment that Schwartze was a classified employee. Therefore, the court found that she was entitled to due process prior to being separated from her job for reasons other than a layoff.

Second, the court found that a factual dispute existed as to whether Schwartze's position was terminated because of (1) a lack of funds or curtailment of work or (2) some other reason. Although the City repeatedly told Schwartze that she was being laid off and her position as ECM Administrator was being eliminated, the City conceded other facts that the district court found supported Schwartze's claim that her layoff was a pretext for unlawful termination. As an example, the court cited Chief Burton's belief "that Schwartze had made comments critical of him and how he ran the Columbia Police Department and thought that she was a contributor to the toxic supervisory culture."

Third, the court found that the predeprivation process afforded Schwartze was insufficient if she was fired instead of laid off. Fourth, it concluded that assuming the layoff was a pretext for Schwartze's termination, she was also denied sufficient postdeprivation process.

Finally, the court rejected Chief Burton's assertion that he was entitled to qualified immunity on the procedural due process claim, stating:

> Burton contends that he is individually entitled to summary judgment on this claim because Schwartze has presented no evidence that he was involved in the decision to eliminate the ECM[] Administrator position, terminate Schwartze, or not allow her to return to the Police Department. However, Schwartze has presented facts to indicate that Burton had conversations with Matthes about the decision to terminate Schwartze. Moreover, Schwartze contends that Matthes informed her that he was not the one responsible for deciding whether Schwartze could be reemployed at the Police Department. It can be reasonably inferred from these facts that Burton, the Police Chief, was involved in making this decision. In addition, there are facts to support an inference that Burton had a negative relationship with Schwartze. Given the factual disputes regarding Burton's role in Schwartze's termination, he is not entitled to summary judgment on this claim.

## II. *Discussion*

On appeal, Chief Burton argues that the district court erred in denying him qualified immunity. He asserts that the district court's ruling erroneously equates "having a role in the decision to lay-off Plaintiff Schwartze (pretexual or otherwise) . . . with the City and City Manager's determination that Schwartze was not entitled to pre or post deprivation due process." According to Chief Burton, such a holding "imposes a duty and obligation on each and every state actor acting under color of law to personally provide adequate due process by virtue of having any role in the decision to separate a governmental employee's employment . . . ." Chief Burton

contends that he "is entitled to qualified immunity because he played no role in the decision not to provide Schwartze with due process and had no clearly established duty to provide due process or intervene to ensure the City Manager and/or the City's legal department provided due process."

Schwartze has moved to dismiss the appeal for lack of jurisdiction on two grounds. First, she argues that an interlocutory appeal after the denial of a summary-judgment motion as to qualified immunity is only allowed where there are issues of law and no disputed issues of fact. According to Schwartze, Chief Burton's qualified-immunity appeal clearly argues disputed issues of fact. Second, Schwartze contends that Chief Burton has raised for the first time on appeal the argument that the decision to terminate Schwartze's employment was unrelated to the decision not to provide Schwartze any procedural due process.

A government official is shielded from liability by qualified immunity "unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether a government official is entitled to qualified immunity should be resolved "at the earliest possible stage in litigation." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). When the parties do not dispute the relevant facts, "a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity . . . ." *Id*. (alteration in original) (quoting *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)). "We review *de novo* a district court's denial of summary judgment based on qualified immunity." *Id*. (quotation and citation omitted).

While "[a]n order denying qualified immunity can be immediately appealable despite the fact that it is interlocutory," "our interlocutory jurisdiction is limited." *Id*. at 445–46 (citing *Cooper v. Martin*, 634 F.3d 477, 479–80 (8th Cir. 2011); *Johnson*

*v. Jones*, 515 U.S. 304, 319–20 (1995)). When a district court denies a defendant summary judgment based on qualified immunity, that defendant "may appeal the 'purely legal issue' of 'whether the facts alleged . . . support a claim of violation of clearly established law.'" *Id*. at 446 (alteration in original) (quoting *Johnson*, 515 U.S. at 313). But a defendant is prohibited from appealing the district court's denial of summary judgment based on qualified immunity when such denial is premised on a determination that "the pretrial record sets forth a 'genuine' issue of fact for trial." *Id*. (quoting *Johnson*, 515 U.S. at 319–20). In summary, "we may hear an appeal of an order denying qualified immunity where the record plainly forecloses the district court's finding of a material factual dispute." *Id*.

"[K]ey factual questions in the present case are both material and disputed." *See id*. Chief Burton does not challenge on appeal that he had a role as a decisionmaker in terminating Schwartze or that Schwartze had a property interest in her employment for which she was entitled to due process; instead, he argues that he was not the decisionmaker responsible for providing her with due process. But the *extent* of Chief Burton's role as a decisionmaker and his due-process obligations to Schwartze are unresolved factual questions.

Because genuine issues of material fact exist regarding Chief Burton's role in the termination of Schwartze, we lack jurisdiction to review the denial of qualified immunity.[4]

---

[4]Even if material factual disputes do not preclude jurisdiction, we agree with Schwartze that Chief Burton raised for the first time on appeal his argument that the decision to terminate Schwartze's employment is separate and distinct from the decision not to provide Schwartze any procedural due process. "Ordinarily, we do not consider an argument raised for the first time on appeal." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002) (citations omitted).

### III. *Conclusion*

Accordingly, we dismiss the appeal for lack of jurisdiction.

_____